1
2
3
4
5
6

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIANEY MANRIQUEZ, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| EXPEDIA, INC., BARRY DILLER, DARA KHOSROWSHAHI and MARK D. OKERSTROM, | <u>**Jury Trial Demanded**</u> |
| Defendant. | |



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Expedia, Inc. ("Expedia" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION

1.      This is a securities class action on behalf of purchasers of the common stock of Expedia between July 27, 2012 and July 25, 2013, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## II.      JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## III.    PARTIES

6.      Plaintiff Vianey Manriquez, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Expedia during the Class Period and has been damaged thereby.

7.      Defendant Expedia, together with its subsidiaries, operates as an online travel company in the United States and internationally.  It provides travel products and services to leisure and corporate travelers, offline retail travel agents, and travel service providers through a portfolio of brands, including Expedia.com, Hotels.com, Hotwire.com, Expedia Affiliate Network, Classic Vacations, Expedia Local Expert, Egencia, Expedia CruiseShipCenters, eLong, Trivago and Venere.com.  The Company's travel offerings consist of airline tickets, hotel rooms, car rentals, destination services, cruises, and package travel provided by various commercial airlines, lodging properties, car rental companies, destination service providers, cruise lines, and other travel product and service companies on a stand-alone and package basis.  It also facilitates the booking of hotel rooms, airline seats, car rentals, and destination services from its travel suppliers, and acts as an agent in the transaction, passing reservations booked by travelers to the relevant travel provider. In addition, the Company provides various media and advertising offerings to travel and non-travel advertisers.  Expedia was founded in 1996 and is headquartered in Bellevue, Washington.  The Company's stock trades on the NASDAQ, an efficient market, under the ticker symbol "EXPE."

8.      Defendant Barry Diller ("Diller"), at all relevant times, was Expedia's controlling shareholder, and has served as the Chairman of its Board of Directors, its Senior Executive and Chairman of the Expedia Executive Committee.

9.      Defendant Dara Khosrowshahi ("Khosrowshahi"), at all relevant times, served as President, Chief Executive Officer ("CEO"), a member of the Executive Committee and a director of Expedia.  During the Class Period, defendant Khosrowshahi cashed in, selling 125,000 shares of Expedia stock between November 1 and November 6, 2012, receiving

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 2



HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

$7,472,919 in proceeds.  For fiscal 2012, defendant Khosrowshahi received a substantial increase in his annual compensation, which jumped to $15.3 million from $6.3 million in fiscal 2011, including: (i) a $3 million cash bonus, three times the cash bonus he received for fiscal 2011; (ii) $10.4 million in stock and option awards, up from the $3.95 million he received for fiscal 2011; and (iii) $895,000 in other perks (including $421,197 for personal use of the corporate jet and $463,453 for the past three years' dividends on unvested restricted shares).  Additionally, in July 2012, Khosrowshahi received 300,000 stock options valued at $6.7 million and a month later, in connection with signing a new three-year employment contract, 400,000 previously restricted shares granted in 2006 were immediately vested.  As detailed by the *Seattle Times* on June 22, 2013, "[a]ll told, including salary, bonus, options exercised and stock vested, Khosrowshahi received more than $36 million in income from Expedia in 2012," while "Expedia lost ground: net income dropped 7 percent over the year, excluding the impact of the spinoff of TripAdvisor in December 2011," and despite the fact that "Expedia's bigger competitor, Priceline, recorded a 34 percent increase in net income from continuing operations over 2011."

10.     Defendant Mark D. Okerstrom ("Okerstrom"), at all relevant times, served as Chief Financial Officer and Executive Vice President of Expedia.  For fiscal 2012, defendant Okerstrom received $3.32 million in total compensation, including a $1.5 million cash bonus, more than three times larger than his fiscal 2011 cash bonus; approximately $1.3 million in stock options; and $36,662 in other perks.

11.     Defendants Diller, Khosrowshahi and Okerstrom are collectively referred to herein as the "Individual Defendants."

12.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Expedia, were privy to confidential and proprietary information concerning Expedia, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Expedia, as discussed in detail below.  Because of their positions with Expedia, the



Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Expedia business.

14.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

15.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Expedia's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 4



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  statements that had become materially misleading or untrue, so that the market price of Expedia

2  common stock would be based upon truthful and accurate information. The Individual

3  Defendants' misrepresentations and omissions during the Class Period violated these specific

4  requirements and obligations.

5        16.    The Individual Defendants are liable as participants in a fraudulent scheme and

6  course of conduct that operated as a fraud or deceit on purchasers of Expedia common stock by

7  disseminating materially false and misleading statements and/or concealing material adverse

8  facts. The scheme: (i) deceived the investing public regarding Expedia's business, operations

9  and management and the intrinsic value of Expedia common stock; (ii) allowed the Individual

10  Defendants and certain Company insiders to collectively sell their personally held Expedia

11  common stock for millions of dollars in proceeds, including more than $7.4 million worth of

12  Expedia stock sold by defendant Khosrowshahi; (iii) allowed the Individual Defendants to obtain

13  millions of dollars in cash bonuses and other perks for fiscal 2012; (iv) precluded investor

14  scrutiny of the TripAdvisor.com spin-off detailed below, including defendant Diller's sale of

15  $295+ million in TripAdvisor stock post-spin-off; and (v) caused plaintiff and members of the

16  Class to purchase Expedia common stock at artificially inflated prices.

17              **IV.   CLASS ACTION ALLEGATIONS**

18        17.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

19  Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the

20  common stock of Expedia during the Class Period and who were damaged thereby (the "Class").

21  Excluded from the Class are defendants and their families, the officers and directors of the

22  Company, at all relevant times, members of their immediate families and their legal

23  representatives, heirs, successors or assigns and any entity in which defendants have or had a

24  controlling interest.

25        18.    The members of the Class are so numerous that joinder of all members is

26  impracticable. Throughout the Class Period, Expedia common stock was actively traded on the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 5



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and

2  can only be ascertained through appropriate discovery, plaintiff believes that there are thousands

3  of members in the proposed Class.  Record owners and other members of the Class may be

4  identified from records maintained by Expedia or its transfer agent and may be notified of the

5  pendency of this action by mail, using the form of notice similar to that customarily used in

6  securities class actions.

7         19.     Plaintiff's claims are typical of the claims of the members of the Class as all

8  members of the Class are similarly affected by defendants' wrongful conduct in violation of

9  federal law complained of herein.

10         20.     Plaintiff will fairly and adequately protect the interests of the members of the

11  Class and has retained counsel competent and experienced in class action and securities

12  litigation.

13         21.     Common questions of law and fact exist as to all members of the Class and

14  predominate over any questions solely affecting individual members of the Class.  Among the

15  questions of law and fact common to the Class are:

16                (a)     whether the federal securities laws were violated by defendants' acts as

17  alleged herein;

18                (b)     whether statements made by defendants to the investing public during the

19  Class Period misrepresented material facts about the business and operations of Expedia;

20                (c)     whether the price of Expedia common stock was artificially inflated

21  during the Class Period; and

22                (d)     to what extent the members of the Class have sustained damages and the

23  proper measure of damages.

24         22.     A class action is superior to all other available methods for the fair and efficient

25  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

26  the damages suffered by individual Class members may be relatively small, the expense and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 6

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    burden of individual litigation make it impossible for members of the Class to individually

2    redress the wrongs done to them.  There will be no difficulty in the management of this action as

3    a class action.

4                    **V.       SUBSTANTIVE ALLEGATIONS**

5    **A.     Background**

6            23.     Expedia is an Internet-based travel website company headquartered in Bellevue,

7    Washington, with localized sites for 29 countries.  Its websites book airline tickets, hotel

8    reservations, car rentals, cruises, vacation packages and various attractions and services via the

9    World Wide Web and telephone travel agents.

10           24.     Expedia was founded as a division of Microsoft and spun-off in 1999.  Expedia

11   was then acquired by InterActive Corporation ("IAC") and again spun-off in 2004 as part of a

12   plan to separate IAC into two independent public companies.  Expedia's common stock has been

13   traded on the NASDAQ since August 9, 2005, but due to the ownership of all of its Class B

14   common stock by Liberty Media Corporation ("Liberty") through companies owned by Liberty

15   and companies owned jointly by Liberty and defendant Diller, Expedia is a controlled company

16   and Diller is its controlling shareholder.

17           25.     TripAdvisor is a travel website founded in 2000 and acquired by IAC in 2004 that

18   assists customers in gathering travel information, posting reviews and opinions of travel-related

19   content and engaging in interactive travel forums.  TripAdvisor was an early adopter of user-

20   generated content.  The website services are free to users, who provide most of the content, and

21   the website is supported by an advertising business model.

22           26.     TripAdvisor was spun off from IAC as part of Expedia in August 2005.

23   TripAdvisor functions as a platform that sends online shopping traffic to Expedia and other

24   online travel agencies and travel suppliers, and earns money almost entirely from its cost-per-

25   click advertising.  The lion's share of TripAdvisor's traffic and advertising traditionally involved

26   Expedia.  TripAdvisor more or less operated a huge segment of Expedia's ads behind the scenes,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 7

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  635264 V1

while earning fees from qualified leads it referred to Expedia.  There was a technological advantage to this arrangement while TripAdvisor was owned by Expedia, in that Expedia's and TripAdvisor's systems were built to talk to each other seamlessly.

27.     In April 2011, Expedia announced that it would split into two publicly traded companies by spinning off the TripAdvisor brand of travel sites.  According to defendant Khosrowshahi at the time, the move would "allow[] the two businesses to be pure plays and to operate with the proper amount of focus to grow respectively."

28.     As detailed in the Form S-4/A Registration Statement used to conduct the spin-off in late 2011, defendant Diller then had voting control over 22% of Expedia's common stock (or 31% assuming exercise of his vested shares of Expedia common stock and conversion of all of his Series B common stock) and 100% of the Series B common stock "and, consequently, approximately 62% of the combined voting power of the outstanding Expedia capital stock." As a result, Diller had the power to effectuate the transactions required to complete the spin-off regardless of the vote of any other Expedia stockholder.

29.     The Form S-4/A also explained that post-spin-off, Diller would serve as Chairman of the Board of Directors of TripAdvisor and its Senior Executive, while retaining his role as Chairman and Senior Executive of Expedia; defendant Khosrowshahi would serve as a director of TripAdvisor while retaining his role as President, CEO and a director of Expedia; and non-party Victor A. Kaufman (who, along with defendant Diller, is an executive at IAC) would serve as a director of TripAdvisor while retaining his role as Vice Chairman and director of Expedia. These relationships would permit defendants Diller and Khosrowshahi and Kaufman to favor TripAdvisor's interests over Expedia's when they faced decisions that might affect both Expedia and TripAdvisor.

30.     In December 2011, the spin-off was completed and TripAdvisor was spun off in a public stock offering.  Following the spin-off, defendant Diller and Liberty together beneficially owned 23% of Expedia common stock (or 32% assuming exercise of defendant Diller's vested

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 8



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   stock options and conversion of all shares of Class B common stock into shares of common

2   stock) and 100% of the outstanding shares of Class B Expedia common stock and, consequently,

3   pursuant to his voting agreement with Liberty, defendant Diller maintained 64% of Expedia's

4   combined voting power.  Concomitantly, defendant Diller controlled the vote of 33.5% of the

5   outstanding shares of TripAdvisor common stock (assuming exercise of his exercisable stock

6   options and conversion of all shares of Class B TripAdvisor common stock into shares of

7   common stock) and 100% of the outstanding shares of TripAdvisor Class B common stock and,

8   consequently, 62.3% of TripAdvisor's voting power.

9           31.     During the Class Period, defendants misrepresented the impact that spinning off

10  TripAdvisor would have on Expedia's revenues and profits, but for the informal strategic

11  relationship pursuant to which TripAdvisor continued directing significant web traffic to Expedia

12  post spin-off, and the detrimental impact the spin-off would have on Expedia's business once

13  defendants ceased adhering to that informal strategic partnership and TripAdvisor significantly

14  stopped directing web traffic to Expedia.  Specifically, as would later be detailed by *The Wall*

15  *Street Journal* in a July 25, 2013 expose, Expedia "was hurt by its own erstwhile subsidiary,

16  TripAdvisor, which redesigned its websites to display fewer of the pop-up ads that had been

17  referring many potential customers to Expedia."

18          32.     As a result, as emphasized by *The Wall Street Journal* on July 25, 2013, while

19  Expedia "booked a 32% drop in profit and slower order growth in the second quarter [of 2013],

20  rattling investors who had sent its shares to an all-time high in February after a four year streak

21  of rapid growth" and causing Expedia to "shed more than $2 billion in market value … as its

22  shares fell 24% to $49.36" in afterhours trading on July 25, 2013, "TripAdvisor itself"

23  announced on Wednesday July 24, 2013, that its own "profit rose 26% to $67 million, as revenue

24  jumped 25% to $246.9 million" in the same quarter, causing TripAdvisor's stock to rally up

25  "16% on Thursday [July 25, 2013]."

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 9



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1       33.    Defendants also concealed during the Class Period that performance at the

2   Company's Hotwire unit was failing.

3       34.    Defendants were motivated to conceal and misrepresent the impact of the Trip

4   Advisor spin-off on Expedia's business post spin-off in order to: (i) avoid investor scrutiny of the

5   Trip Advisor spin-off by making it appear Expedia was operating profitably during fiscal 2012

6   and early fiscal 2013;  (ii) justify the payment of tens of millions of dollars in executive

7   compensation to the Individual Defendants and others; (iii) allow certain insiders – including

8   defendant Khosrowshahi – to cash in by selling millions of dollars' worth of Expedia stock at

9   artificially inflated prices; and (iv) allow Expedia to use its common stock as acquisition

10   currency to attempt to replace the international sales capabilities TripAdvisor had provided it

11   with in the past by purchasing an international travel website.

12   **B.    Materially False and Misleading Statements Issued During the Class Period**

13       35.    The Class Period begins on July 27, 2012.  On the evening of July 26, 2012, after

14   the close of trading, Expedia announced its financial results for its 2012 second quarter, ended

15   June 30, 2012 – its second full quarter following the TripAdvisor spin-off.  For the quarter, the

16   Company reported revenues of $1.04 billion, 14% greater than the second quarter of fiscal 2011,

17   and adjusted EBITDA of $223 million, 18% greater than the second quarter of fiscal 2011.

18       36.    Following the issuance of the Company's 2012 second quarter financial results

19   and fiscal 2013 guidance, on July 26, 2012, defendants made positive statements about the

20   Company's financial condition and its outlook on a conference call with analysts and investors.

21   During the call, defendant Okerstrom stated as to the Company's fiscal 2012 guidance, in

22   pertinent part, that Expedia was then "expecting adjusted EBITDA growth in the high-single

23   digits with the possibility of low double-digit growth."

24       37.    In the Company's quarterly financial report filed with the SEC on Form 10-Q on

25   July 27, 2012, Expedia described its ongoing financial relationship with TripAdvisor in pertinent

26   part as follows:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 10

HB HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

In connection with the spin-off, we entered into various agreements with TripAdvisor, a related party due to common ownership, including, among others, a separation agreement, a tax sharing agreement, an employee matters agreement and a transition services agreement. In addition, ***we will continue to work with TripAdvisor pursuant to various commercial agreements between subsidiaries of Expedia, on the one hand, and subsidiaries of TripAdvisor, on the other hand. The various commercial agreements, including click-based advertising agreements, content sharing agreements and display-based and other advertising agreements, have terms of up to one year.*** We recognized approximately $2 million and $3 million of revenue and expensed approximately $56 million and $107 million related to these various agreements with TripAdvisor during the three and six months ended June 30, 2012. In addition, we reclassified sales and marketing expense related to amounts we paid to TripAdvisor prior to the spin-off, which were previously eliminated in consolidation, to third party expenses for the three and six months ended June 30, 2011. Net amounts payable to TripAdvisor were $35 million and $14 million as of June 30, 2012 and December 31, 2011 and were primarily included in accounts payable, other on the consolidated balance sheet.

38.     On this purportedly positive news, the price of Expedia's stock spiraled upward, increasing more than $10 per share in intraday trading – or 20% – on unusually high volume of more than 17 million shares traded.

39.     On September 17, 2012, Expedia director John C. Malone, Chairman of the Liberty Board of Directors, tendered his resignation to be effective immediately prior to the election of a designee to take his place.  Pursuant to its stock holder agreement, Liberty had the right to name his replacement and named Liberty's general counsel, Pamela L. Coe, in his place on November 29, 2012.

40.     On October 25, 2012, Expedia announced its financial results for its 2012 third quarter, ended September 30, 2012.  For the quarter, the Company reported revenues of $1.199 billion, 17% greater than the third quarter of fiscal 2011, and adjusted EBITDA of $293.6 million, 6% greater than the third quarter of fiscal 2011.

41.     Following the issuance of the Company's 2012 third quarter financial results and fiscal 2012 guidance, on October 25, 2012, defendants made positive statements about the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 11



HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Company's financial condition and its outlook on a conference call with analysts and investors. During the call, defendant Okerstrom stated as to the Company's fiscal 2012 guidance, in pertinent part, that Expedia was then "expecting adjusted EBITDA growth to be in the low double-digit range."

42.    In the Company's quarterly financial report filed with the SEC on Form 10-Q on October 26, 2012, Expedia described its ongoing financial relationship with TripAdvisor in pertinent part as follows:

> In connection with the spin-off, we entered into various agreements with TripAdvisor, a related party due to common ownership, including, among others, a separation agreement, a tax sharing agreement, an employee matters agreement and a transition services agreement. In addition, ***we will continue to work with TripAdvisor pursuant to various commercial agreements between subsidiaries of Expedia, on the one hand, and subsidiaries of TripAdvisor, on the other hand. The various commercial agreements, including click-based advertising agreements, content sharing agreements and display-based and other advertising agreements, have terms of up to one year.*** We recognized approximately $2 million and $5 million of revenue and expensed approximately $57 million and $164 million related to these various agreements with TripAdvisor during the three and nine months ended September 30, 2012. In addition, we reclassified sales and marketing expense related to amounts we paid to TripAdvisor prior to the spin-off, which were previously eliminated in consolidation, to third party expenses for the three and nine months ended September 30, 2011. Net amounts payable to TripAdvisor were $32 million and $14 million as of September 30, 2012 and December 31, 2011 and were primarily included in accounts payable, other on the consolidated balance sheet.

43.    On this purportedly positive news, the price of Expedia's stock again spiraled upward, increasing nearly $8 per share – or more than 15% – on unusually high volume of more than 13 million shares traded.

44.    On December 11, 2012, defendant Diller sold his family's ownership interest in TripAdvisor to Liberty. That same day, Expedia filed a Current Report on Form 8-K with the SEC attaching the following memo, which Expedia stated had been circulated to Expedia's employees that same day:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 12



HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

To: All Expedia Employees

From: Barry Diller

Re: Message from the Chairman

As many of you may have read of the sale of our family's interest in TripAdvisor, and with questions of whether or not this is the first step in a general disposal of assets, I wanted to be quite clear that the answer to that question is 'NO'.

This is the statement that I made about TripAdvisor:

"Ever since we acquired TripAdvisor in 2004 it's been one of the smoothest and most trouble-free growth stories I've ever known," said Barry Diller. "During that time it grew from a startup with $23 million in annual revenues to a $5 billion plus public company with a global brand that operates the world's largest travel site. Its great progress has happened because of the superb talents of its co-founder and CEO, Steve Kaufer, and the team he leads. My only reason for resigning as Chairman and disposing of my interests is that I have more obligations than time and transferring control of TripAdvisor to Liberty is something I'm very comfortable with – Liberty has proven itself a fine steward and leader of its controlled businesses."

Since the original sale by Microsoft ten years ago, I've been the Chairman of Expedia, through all it's good times, and some less than good, and enjoyed it thoroughly. I'm very proud of the work you all do and the prospects for the future and plan to stay engaged as long as I'm sentient. I hope this clarifies, and I hope you all have a wonderful holiday and new year…

Barry Diller

45.     On December 18, 2012, Expedia director William R. Fitzgerald tendered his resignation as a member of the Expedia Board effective immediately upon his replacement. Pursuant to its stock holder agreement, Liberty had the right to replace him and replaced him with John C. Malone, Chairman of the Liberty Board of Directors, effective that same day.

46.     On December 21, 2012, Expedia disclosed that it had agreed to acquire a 62% interest in trivago GmbH ("trivago"), a Düsseldorf, Germany-based hotel metasearch web site, in exchange for consideration consisting of: (i) €426,398,400 in cash; (ii) a number of shares of Expedia common stock having a value, based on a thirty-day trailing average of closing trading

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 13



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

prices prior to the closing of the acquisition, of €42,632,216; and (iii) €7,608,399 in cash, to be paid to trivago for the shares being issued to Expedia by trivago in the acquisition (cash trivago would use to cancel and retire a portion of the options currently held by its employees).

47.     On February 5, 2013, Expedia announced its financial results for its 2012 fourth quarter and fiscal year ended December 31, 2012.  For the fourth quarter, the Company reported revenues of $974.9 million, 24% greater than the fourth quarter of fiscal 2011, and adjusted EBITDA of $184.6 million, 14% greater than the fourth quarter of fiscal 2011.  For fiscal 2012, the Company reported revenues of $4.03 billion, 17% greater than fiscal 2011, and adjusted EBITDA of $802.9 million, 13% greater than the fiscal 2011.

48.     Following the issuance of the Company's 2012 fourth quarter and fiscal 2012 financial results and fiscal 2013 guidance, on February 5, 2013, defendants made positive statements about the Company's financial condition and its outlook on a conference call with analysts and investors.  During the call, defendant Okerstrom stated as to Expedia's fiscal 2013 guidance, in pertinent part, that Expedia was then "expecting to see adjusted EBITDA growth in the low double-digit range, with the possibility of hitting the low teens," and that "[i]n terms of specific line items, [Expedia was then] forecasting both cost of revenue and general and administrative expenses to grow slower than revenue."  Though he stated that Expedia's first quarter was traditionally its "smallest seasonal quarter for EBITDA," "rolling it all up," defendant Okerstrom emphasized that Expedia was then "expecting to deliver another solid year with adjusted EBITDA growth building through the quarters, most of it coming in the back half of the year."

49.     In the Company's annual financial report filed with the SEC on Form 10-K on February 6, 2013, Expedia described its ongoing financial relationship with TripAdvisor in pertinent part as follows:

> In connection with the spin-off, we entered into various agreements with TripAdvisor, a related party due to common ownership, including, among others, a separation agreement, a tax

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 14



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

sharing agreement, an employee matters agreement and a transition services agreement. ***In addition, we have continued to work together with TripAdvisor pursuant to various commercial agreements between subsidiaries of Expedia, on the one hand, and subsidiaries of TripAdvisor, on the other hand.***

\*       \*       \*

In connection with the spin-off, we entered into various agreements with TripAdvisor, a related party due to common ownership, including, among others, a separation agreement, a tax sharing agreement, an employee matters agreement and a transition services agreement. In addition, ***we will continue to work with TripAdvisor pursuant to various commercial agreements between subsidiaries of Expedia, on the one hand, and subsidiaries of TripAdvisor, on the other hand.*** During 2012, we recognized approximately $6 million of revenue and expensed approximately $205 million related to these various agreements with TripAdvisor. From December 21, 2011 to December 31, 2011, we expensed $4 million related to these various agreements. In addition, we reclassified sales and marketing expense related to amounts we paid to TripAdvisor prior to the spin-off, which were previously eliminated in consolidation, to third party expenses for all periods presented. Net amounts payable to TripAdvisor were $24 million and $14 million as of December 31, 2012 and December 31, 2011 and were primarily included in accounts payable, other on the consolidated balance sheet.

50.    The Form 10-K also stated, in pertinent part, that ***"a significant amount of traffic is directed to our websites through our participation in pay-per-click and display advertising campaigns** on search engines, including Google, travel metasearch engines, including Kayak, and **internet media properties, including TripAdvisor."*** Although the Form 10-K stated that "[p]ricing and operating dynamics for these traffic sources can experience rapid change, both technically and competitively," and that "*if* competitive dynamics impact the costs or effectiveness of . . . traffic-generating arrangements in a negative manner, our business and financial performance would be adversely affected, potentially to a material extent," the purported warning was itself false and misleading in that it failed to disclose that the Individual Defendants had already determined to redesign the TripAdvisor website to display fewer of the pop-up ads that had been traditionally referring many potential customers to Expedia.  It also failed to disclose the detrimental materiality of the loss of those referrals to Expedia's business.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 15



51.     On March 8, 2013, the Company completed its acquisition of a majority interest in trivago, issuing 875,200 shares of its common stock to the three managing directors of trivago in exchange for the shares of trivago held by them on a pro rata basis. The number of Company shares issued was calculated based on an aggregate value of €42,632,216 for trivago using a thirty-day trailing average of closing trading prices of Expedia common stock and exchange rates prior to March 8, 2013.  In all, Expedia said it issued 1,342,872 shares of its common stock – on an unregistered basis – in connection with the acquisition.

52.     On April 25, 2013, Expedia announced its financial results for its 2013 first quarter, ended March 31, 2013.  For the quarter, the Company reported revenues of $1.012 billion, 24% greater than the first quarter of fiscal 2012, and adjusted EBITDA of $105.1 million, 3% greater than the first quarter of fiscal 2012.

53.     Following the issuance of the Company's 2013 first quarter financial results and fiscal 2013 guidance, on April 25, 2013, defendants made positive statements about the Company's financial condition and its outlook on a conference call with analysts and investors. During the call, defendant Okerstrom stated as to the Company's fiscal 2013 guidance, in pertinent part, as follows:

> [W]e continue to expect adjusted EBITDA growth in the low-double-digits with the possibility of hitting the low-teens. Note that we have added adjusted EBITDA for trivago to our forecast in the range of $20 million to $30 million. However, we have reduced our organic forecast by a similar amount, due primarily to the challenges we are seeing at Hotwire. In terms of the shape of the year, we now expect all of our annual adjusted EBITDA dollar growth to come in the back half of the year.

54.     In the Company's quarterly financial report filed with the SEC on Form 10-Q on April 26, 2013, Expedia described its ongoing financial relationship with TripAdvisor in pertinent part as follows:

> In connection with the spin-off, we entered into various agreements with TripAdvisor, a related party due to common ownership, including, among others, a separation agreement, a tax sharing agreement, an employee matters agreement and a transition

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 16



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

services agreement. In addition, ***we will continue to work with TripAdvisor pursuant to various commercial agreements between subsidiaries of Expedia, on the one hand, and subsidiaries of TripAdvisor, on the other hand.*** During the three months ended March 31, 2013 and 2012, we recognized approximately $2 million of revenue in both periods and expensed approximately $61 million and $51 million related to these various agreements with TripAdvisor. Net amounts payable to TripAdvisor were $38 million and $24 million as of March 31, 2013 and December 31, 2012 and were primarily included in accounts payable, other on the consolidated balance sheet.

55.     Despite the overall positive tone in Expedia's still false and misleading statements issued on April 25-26, 2013, the Company's stock price fell $8.91 per share – or 14% – over the next two trading days as a result of Expedia's dour statements about the Hotwire business, falling from its close of $64.97 per share on April 25, 2013 to close at $56.06 per share on April 29, 2013 (the next trading day after the Form 10-Q was issued), on unusually high trading volume of more than 8.9 million shares traded on April 26, 2013, and more than 6.4 million shares traded on April 29, 2013.  However, as the full extent of the Hotwire issues and the detrimental impact of the breakdown of the TripAdvisor relationship was still concealed from the investment community, the price of the Company's stock remained artificially inflated.

56.     The statements referenced above in ¶¶35-54 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     that following the spin-off, TripAdvisor had been directing a significant amount of lucrative web traffic to Expedia pursuant to an informal strategic partnership between the two companies that inured to the benefit of Expedia and to the detriment of TripAdvisor;

(b)     that the lucrative web traffic directed to Expedia from TripAdvisor following the spin-off had been a material source of Expedia's outsized revenues following the spin-off;

(c)     that TripAdvisor would stop directing web traffic to Expedia in early 2013;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 17



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    (d)    that performance was failing at Expedia's Hotwire unit; and

2    (e)    that based on the foregoing, defendants lacked a reasonable basis for their

3    positive statements about the Company's business during the Class Period.

4    57.    On July 25, 2013, after the close of trading, Expedia issued a press release

5    announcing its second quarter 2013 financial results for the quarter ended June 30, 2013.

6    Expedia's second-quarter 2013 profit sank to $71.5 million from $105.2 million a year earlier.

7    Overall, bookings rose only 13%, well below the 19% surge the Company posted during fiscal

8    2012.  The Company also lowered its guidance for 2013 adjusted earnings, predicting growth in

9    the mid to high single-digits.

10   58.    In response to this announcement, on July 26, 2013, the price of Expedia common

11   stock declined $17.80 per share – or more than 27% – on extremely high trading volume of more

12   than 28.25 million shares traded, or almost ten times the average daily trading volume over the

13   preceding ten trading days.

14   59.    The market for Expedia common stock was open, well-developed and efficient at

15   all relevant times.  As a result of these materially false and misleading statements and failures to

16   disclose, Expedia common stock traded at artificially inflated prices during the Class Period.

17   Plaintiff and other members of the Class purchased or otherwise acquired Expedia common

18   stock relying upon the integrity of the market price of Expedia common stock and market

19   information relating to Expedia, and have been damaged thereby.

20   60.    During the Class Period, defendants materially misled the investing public,

21   thereby inflating the price of Expedia common stock, by publicly issuing false and misleading

22   statements and omitting to disclose material facts necessary to make defendants' statements, as

23   set forth herein, not false and misleading.  Said statements and omissions were materially false

24   and misleading in that they failed to disclose material adverse information and misrepresented

25   the truth about the Company, its business and operations, as alleged herein.

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 18



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

61.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Expedia's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Expedia and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## VI.     ADDITIONAL SCIENTER ALLEGATIONS

62.     As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company or in their own name during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Expedia, and their control over, and/or receipt and/or modification of, Expedia's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

63.     Defendants knew and/or recklessly disregarded the false and misleading nature of the information which they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of personnel at the highest levels of the Company, including the Individual Defendants.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 19



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

64.     The Individual Defendants, because of their positions with Expedia, controlled the contents of the Company's public statements during the Class Period.  Each defendant was provided with or had access to copies of the documents alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information, these defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  As a result, each of these defendants is responsible for the accuracy of Expedia's corporate statements and is therefore responsible and liable for the representations contained therein.

65.     Additionally, defendants' materially false and/or misleading statements alleged herein were made willfully so as to: (i) avoid investor scrutiny of the TripAdvisor spin-off by making it appear that Expedia was operating profitably during fiscal 2012 and the first quarter of fiscal 2013; (ii) justify the payment of tens of millions of dollars in executive compensation to the Individual Defendants and others; (iii) allow certain insiders – including defendant Khosrowshahi – to cash in by selling millions of dollars' worth of Expedia stock at artificially inflated prices; and (iv) to allow Expedia to use its common stock as acquisition currency to acquire trivago in order to attempt to replace the international sales capabilities TripAdvisor had once provided it with.

## VII.    LOSS CAUSATION/ECONOMIC LOSS

66.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Expedia common stock and operated as a fraud or deceit on Class Period purchasers of Expedia common stock by failing to disclose and misrepresenting the adverse facts detailed herein.  Defendants' false and misleading statements had the intended effect and caused Expedia common stock to trade at artificially inflated levels throughout the Class Period, trading above $68 per share in intraday

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 20



HAGENS BERMAN
1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  635264 V1

1   trading on February 1, 2013.  When defendants' prior misrepresentations and fraudulent conduct

2   were disclosed and became apparent to the market, the price of Expedia common stock fell

3   precipitously as the prior artificial inflation came out.  As a result of their purchases of Expedia

4   common stock during the Class Period, plaintiff and the other Class members suffered economic

5   loss, *i.e.*, damages, under the federal securities laws.

6       67.     By failing to disclose to investors the adverse facts detailed herein, defendants

7   presented a misleading picture of Expedia's business and prospects.  When the truth about the

8   Company was revealed to the market, the price of Expedia common stock fell precipitously.

9   These declines removed the inflation from the price of Expedia common stock, causing real

10   economic loss to investors who had purchased Expedia common stock during the Class Period.

11       68.     The declines in the price of Expedia common stock after the corrective

12   disclosures came to light were a direct result of the nature and extent of defendants' fraudulent

13   misrepresentations being revealed to investors and the market.  The timing and magnitude of the

14   price declines in Expedia common stock negate any inference that the loss suffered by plaintiff

15   and the other Class members was caused by changed market conditions, macroeconomic or

16   industry factors or Company-specific facts unrelated to defendants' fraudulent conduct.  The

17   economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct

18   result of defendants' fraudulent scheme to artificially inflate the price of Expedia common stock

19   and the subsequent significant decline in the value of Expedia common stock when defendants'

20   prior misrepresentations and other fraudulent conduct were revealed.

### VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

21       69.     At all relevant times, the market for Expedia common stock was an efficient

23   market for the following reasons, among others:

24       (a)     Expedia common stock met the requirements for listing, and was listed

25   and actively traded on the NASDAQ, a highly efficient, electronic stock market;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 21



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1        (b)     as a regulated issuer, Expedia filed periodic public reports with the SEC

2  and the NASDAQ;

3        (c)     Expedia regularly communicated with public investors via established

4  market communication mechanisms, including regular disseminations of press releases on the

5  national circuits of major newswire services and other wide-ranging public disclosures, such as

6  communications with the financial press and other similar reporting services; and

7        (d)     Expedia was followed by securities analysts employed by major brokerage

8  firms who wrote reports which were distributed to the sales force and certain customers of their

9  respective brokerage firms.  Each of these reports was publicly available and entered the public

10  marketplace.

11        70.    As a result of the foregoing, the market for Expedia common stock promptly

12  digested current information regarding Expedia from all publicly available sources and reflected

13  such information in the prices of the stock.  Under these circumstances, all purchasers of Expedia

14  common stock during the Class Period suffered similar injury through their purchase of Expedia

15  common stock at artificially inflated prices and a presumption of reliance applies.

16                     **IX.    NO SAFE HARBOR**

17        71.    The statutory safe harbor provided for forward-looking statements under certain

18  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

19  Many of the specific statements pleaded herein were not identified as "forward-looking

20  statements" when made.  To the extent there were any forward-looking statements, there were no

21  meaningful cautionary statements identifying important factors that could cause actual results to

22  differ materially from those in the purportedly forward-looking statements.  Alternatively, to the

23  extent that the statutory safe harbor does apply to any forward-looking statements pleaded

24  herein, defendants are liable for those false forward-looking statements because at the time each

25  of those forward-looking statements was made, the particular speaker knew that the particular

26  forward-looking statement was false, and/or the forward-looking statement was authorized

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 22



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  and/or approved by an executive officer of Expedia who knew that those statements were false

2  when made.

### COUNT I

**Violation Of §10(B) Of The Exchange Act And Rule 10b-5**
**Promulgated Thereunder Against Defendants Expedia,**
**Khosrowshahi And Okerstrom**

6       72.     Plaintiff repeats and realleges each and every allegation contained above as if

7  fully set forth herein.

8       73.     During the Class Period, defendants Expedia, Khosrowshahi and Okerstrom

9  disseminated or approved the materially false and misleading statements specified above, which

10  they knew or deliberately disregarded were misleading in that they contained misrepresentations

11  and failed to disclose material facts necessary in order to make the statements made, in light of

12  the circumstances under which they were made, not misleading.

13       74.     These defendants: (a) employed devices, schemes, and artifices to defraud; (b)

14  made untrue statements of material fact and/or omitted to state material facts necessary to make

15  the statements made not misleading; and (c) engaged in acts, practices, and a course of business

16  which operated as a fraud and deceit upon the purchasers of the Company's common stock

17  during the Class Period.

18       75.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity

19  of the market, they paid artificially inflated prices for Expedia common stock.  Plaintiff and the

20  Class would not have purchased Expedia common stock at the prices they paid, or at all, if they

21  had been aware that the market prices had been artificially and falsely inflated by these

22  defendants' misleading statements.

23       76.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff

24  and the other members of the Class suffered damages in connection with their purchases of

25  Expedia common stock during the Class Period.

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 23



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

### COUNT II

#### Violation Of §20(A) Of The Exchange Act
#### Against The Individual Defendants

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of Expedia within the meaning of §20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Expedia, and their ownership of Expedia common stock, the Individual Defendants had the power and authority to cause Expedia to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

### X.     PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### XI.     JURY DEMAND

Plaintiff hereby demands a trial by jury.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  DATED:  August 27, 2013                        HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                                 By:    s/ Steve W. Berman
4                                                        Steve W. Berman, WSBA #12536
                                                  By:    s/ Karl P. Barth
5                                                        Karl P. Barth, WSBA #22780
                                                  1918 Eighth Avenue, Suite 3300
6                                                 Seattle, WA  98101
                                                  Telephone:  206-623-7292
7                                                 Fax:  206-623-0594

8

9                                                 Samuel H. Rudman
                                                  Mary K. Blasy
10                                                ROBBINS GELLER RUDMAN & DOWD LLP
                                                  58 South Service Road, Suite 200
11                                                Melville, NY  11747
                                                  Telephone:  631-367-7100
12                                                Fax:  631-367-1173

13

14                                                Michael I. Fistel, Jr.
                                                  Marshall P. Dees
15                                                HOLZER HOLZER & FISTEL, LLC
                                                  200 Ashford Center North, Suite 300
16                                                Atlanta, GA  30338
                                                  Telephone:  770-392-0090
17                                                Fax: 770-392-0029

18                                                *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS - 25



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  635264 V1

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

      Plaintiff has reviewed the initial complaint filed in this action.

      Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

      Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| EXPE | 7/25/13 | 87 | $5,628.89 |
| | 7/25/13 | 52 | $3,390.59 |
| | 7/25/13 | 219 | $14,306.56 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| EXPE | N/A | N/A | N/A |

      During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of Aug. , 2013 in  El PASO , Texas .

                                                             City                          State

(Signature) X

(Print Name) Vianey Manriquez

2